COMMONWEALTH vs. WILLIE J. AVERY
(and a companion case[1]).

Suffolk.    January 10, 1974. — April 2, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Arrest.   Search and Seizure.   Probable Cause.   Practice, Criminal,*
Recording of proceedings, Probable cause hearing.

Where a reliable informant, whose information had in the past led to the
   arrest of persons transporting illegal drugs from another State into
   Boston, described to police in detail two men who would be trans-
   porting such drugs from that State to Boston and their automobile
   with its out-of-State license number, and where experienced officers
   in Boston observed the automobile and, in the vicinity, two men
   fitting the descriptions engaged with "known drug-users" in what
   appeared to be illegal sales of drugs, the officers' warrantless arrests of
   those men were lawful. [62-64]
A warrantless search of an automobile conducted promptly after the
   arrest of all of its known occupants or custodians was lawful, where
   policemen had probable cause to believe that the vehicle, parked on a
   public highway in an area where there were many known drug-users,
   contained a substantial quantity of heroin and a handgun, notwith-
   standing the fact that prior to observing the defendants and the
   vehicle, they had had no probable cause to obtain a search war-
   rant. [64-65]
Even though an officer testified that he searched a defendant before
   arresting him, the arrest was made when the officer, prior to the
   search, restricted the defendant's freedom of movement. [65]
There was no error in denying indigent defendants' motions to dismiss
   made on the ground that they were refused a free copy of a transcript
   of their preliminary hearing, where it did not appear that steno-
   graphic notes were made at that hearing. [65]

INDICTMENTS found and returned in the Superior Court
on November 12, 1971.
   The cases were heard by *Linscott*, J.

---

[1] Commonwealth vs. Eddie Williams, Jr.

The cases were submitted on briefs.

*David Rossman* for the defendants.

*Robert Snider,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, J.   The defendants were found guilty, after a trial without jury in the Superior Court, of possession of heroin with intent to sell. Their appeals are here under G. L. c. 278, §§ 33A-33G. Their assignments of error are based (1) on the denial by the Superior Court judge of their motions to suppress certain evidence which was seized from their persons and from an automobile, and (2) on the denial in the Superior Court of their motions to dismiss the indictments because of the denial in the District Court of their motions, as indigents, for transcripts of a probable cause hearing. There was no error.

The facts material to the motions to suppress evidence were as follows. On the morning of October 7, 1971, Officer Linsky, with sixteen years' experience on the Boston police force, fourteen of those in narcotics investigation, received a telephone call from a confidential informant. Officer Linsky had previously received information concerning illegal heroin traffic from this informant on six separate occasions. As a result, arrests had been made and large quantities of drugs seized in the city of Boston. All of this prior information related to individuals carrying drugs from New York to Boston.

The informant told Officer Linsky that two "good-looking" black males, known to him as "Willie" and "Avery," were operating a 1966 blue Pontiac, New York registration QW1117, and had left the evening before from New York with a large quantity of heroin, and a .38 caliber revolver, to sell drugs in Boston. The informant further identified the defendants by indicating that Avery was wearing a blue denim jacket and pants with a red shirt and white sneakers. The defendant Williams was described as wearing a blue denim jacket and pants with a brown shirt and black boots.

That same day (October 7, 1971), as a result of the

information provided by the informant, Officer Linsky contacted Sergeant Kennedy of the day Drug Control Unit and arranged for some officers to be assigned to "areas of the City where known drug-users and sellers congregate," including the vicinity of Northampton and Washington streets, "to try and locate the New York car." Around noon, Officers Linsky and Currier proceeded, in Currier's private car, to the vicinity of Northampton Street and Shawmut Avenue. In cruising the area, they observed the 1966 blue Pontiac, New York registration QW1117, in front of 617 Massachusetts Avenue.

Thereafter, Officers Linsky and Currier drove to the nearby Shanty Lounge on Washington Street, an area "always congregated by drug sellers, drug users . . .." Two males answering the description given by the informant were observed standing in front of the lounge. They were the only two men in the vicinity who were dressed in denim suits. The defendant Avery, dressed in a denim suit and white sneakers, was "leaning up against . . . [a] building with several known users of Heroin." Police officers saw Avery receive money from the people on the street, and then take something from Williams which he (Williams) had taken from under his belt. Avery returned to the people who had given him money whereupon he was seen shaking hands with them. This series of transactions was observed by two groups of police officers.

At Officer Linsky's request, Sergeant Kennedy, who had been in walkie-talkie communication with Linsky, and two other police officers, all of whom had been observing the defendants, pulled up in front of the Shanty Lounge causing the people to scatter and disperse. Avery and others moved around the corner to the vicinity of the blue Pontiac in clear view of Officers Linsky and Currier. Williams was observed walking five to seven feet behind carrying a brown paper bag. The police officers watched Williams unlock the car and place the paper bag in the automobile. After depositing the bag in the car, Williams was seen giving something, taken from under his belt, to

Avery who thereupon returned to the group of people.

Sergeant Kennedy, on orders from Officer Linsky, came on the scene at which time Avery began to run. Officer Currier yelled, "Halt, police. You are under arrest." Avery proceeded to throw some articles to the ground which were retrieved by Officer Linsky and identified as fourteen packets of heroin. Avery was then placed under arrest by Officer Currier.

Concurrently, Sergeant Kennedy arrested the defendant Williams in the vicinity of the 1966 Pontiac on Massachusetts Avenue, and removed four packets of heroin from under his belt and the car keys from his pocket. There was conflicting evidence as to whether Williams was told that he was under arrest, and informed of his rights, before or after he was searched. The officers searched the automobile and found a brown paper bag underneath the dashboard, and a fully loaded .38 caliber revolver under the front seat. The paper bag was found to contain 109 bags of heroin wrapped in assorted colored elastic bands. Similar colored elastic bands were found on defendant Avery's person. The defendant Avery was also found to be carrying in his pocket $591 in small denominations.

The judge made findings which, while they were not so detailed as the above recitation of evidence, nevertheless established that he accepted that evidence as true in all important respects.

1. The defendants argue, first, that their warrantless arrest and search were illegal. Since contraband was found on Williams's person, and not Avery's, we assume that the argument as to Avery is that he would not have thrown fourteen packets of heroin to the ground except for the police words and conduct as they apprehended him in the course of what he says was an illegal arrest.

The defendants rightly state that where, as here, the legality of the police procedure rests on communications from an informant, dual requirements must be met. There must be (1) a showing that the informant was trustworthy, and (2) a further showing that the informant demonstrated

to the police the reliability of his information by disclosing underlying facts and circumstances on which his information was based. *Aguilar* v. *Texas*, 378 U. S. 108, 112-116 (1964). *Spinelli* v. *United States*, 393 U. S. 410, 415 (1969). *Commonwealth* v. *Stevens*, 362 Mass. 24, 27-28 (1972). *Commonwealth* v. *Kane*, 362 Mass. 656, 659 (1972). These are vital, not merely perfunctory requirements. To justify the intrusion of an arrest and search, the tip must not only come from a credible person, but he must be shown to be relying on something more than a casual rumor or an individual's general reputation. *Spinelli* v. *United States*, *supra*, at 415.

There was no error in the judge's findings that the arrest and search of the defendants were legal. The first prong of the dual tests was met, since the informant could be found to be reliable in that his information had led on six prior occasions to arrests, and to seizure of quantities of illegal drugs. As further proof of reliability, all prior tips forecast the carrying of drugs from New York city to Boston, just like the tip in the instant case. The second prong of the dual tests was also met. Although there was no showing that the informant disclosed to the police the circumstances behind the tip, it is established that this constitutional requirement may be nevertheless met if the tip was corroborated by appropriate independent sources. That was the case here. Not only did the informant predict in detail the appearance and expected behavior of the defendants (*Draper* v. *United States*, 358 U. S. 307 [1959]; *Commonwealth* v. *Stevens*, 362 Mass. 24, 28 [1972]), but also the police officers observed suspicious acts of the defendants. *Commonwealth* v. *Stevens*, 362 Mass. 24, 27-28 (1972), and cases cited.

Thus the informant provided precise information as to the appearance and clothing of the defendants and the appearance and registration of their vehicle. Observations by the police before the arrests verified these descriptions in almost every detail. Then experienced police officers, at a location where such activity was known to take place,

observed the defendants engaged with "known drug-users" (cf. *Commonwealth* v. *Anderson,* 362 Mass. 74, 76-77 [1972]; *Commonwealth* v. *Snow,* 363 Mass. 778 [1973]) in what appeared to these trained observers to be illegal sales of drugs. All told, the police were then possessed of sufficient information to warrant a prudent man in believing that an offence — possession of heroin with intent to sell — had been and was being committed in the vicinity of the Shanty Lounge. *Beck* v. *Ohio,* 379 U. S. 89, 91 (1964). *Commonwealth* v. *Stewart,* 358 Mass. 747, 749 (1971). The arrest of the defendants, and search of their persons, was justified. *Chimel* v. *California,* 395 U. S. 752 (1969).

The subsequent warrantless search of the automobile and the resulting seizure of 109 bags of heroin and the loaded .38 caliber revolver were likewise legal. This search was not unreasonable in the circumstances. Not only did the police at this time have probable cause to conclude that the defendants were engaged in criminal conduct related to the drugs, but also they had probable cause to believe that there was a nexus between that conduct and the vehicle. Before the vehicle was searched, heroin had been found on Williams's person and Avery had been seen to discard heroin. The informant's tip, which had been proved reliable to this point, supported reasonable belief that a substantial quantity of heroin and a gun were in the automobile. The defendant Williams had been seen to place a paper bag within the vehicle.

From an examination of the best reasoned precedents we conclude that legal justification for the warrantless search of the vehicle rests, inter alia, on the facts that the automobile was parked on the public highway; that the search of the automobile was made promptly after the arrest of all of its known occupants or custodians; that there were many known drug users in the neighborhood; and that the police had probable cause to believe that a substantial quantity of heroin as well as a handgun were in the vehicle. See *Commonwealth* v. *Haefeli,* 361 Mass. 271 (1972); *Chambers* v. *Maroney,* 399 U. S. 42 (1970). Finally, the

police had no probable cause, prior to their observation of the defendants and the vehicle, to obtain a search warrant.

Since we have concluded that the searches of the defendants and the automobile were valid, we need not consider the further finding of the trial judge that the findings of guilty were warranted on the evidence exclusive of the items found on Williams's person and in the automobile. Presumably, in referring to these items as "cumulative," the judge was implying that the fourteen packets of heroin thrown away by Avery were sufficient to warrant the convictions of both defendants.

We reject the argument of Williams that the search of his person preceded his arrest. Even though the arresting officer testified that he searched Williams before he arrested him, a determination of when a person is under arrest is governed by an objective standard established by the court. *Commonwealth* v. *Ballou,* 350 Mass. 751, 756 (1966). *Sibron* v. *New York,* 392 U. S. 40, 67 (1968). Clearly, Williams was under arrest before the search was commenced, when the officer seized him and restricted his liberty of movement. *Henry* v. *United States,* 361 U. S. 98, 103 (1959).

2. The defendants were found indigent in the District Court and moved in that court for a free copy of a transcript of their preliminary hearing. This request was denied. It does not appear that stenographic notes were made at the preliminary hearing. There was no error in the Superior Court judge's denial of the defendants' motions to dismiss the indictments on this ground. *Commonwealth* v. *Britt,* 362 Mass. 325 (1972). G. L. c. 221, § 91B.

*Judgments affirmed.*