COMMONWEALTH *vs.* GEOFFREY HONNEUS.

Nantucket. May 6, 1983. — September 13, 1983.

Present: HENNESSEY, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Probable cause, Affidavit.

An affidavit in support of an application for a search warrant which recited that an informant said, without indicating the basis of the informant's knowledge, that the defendant was selling drugs from his apartment, that the defendant had a supply of cocaine on hand, and that the defendant, on the day the warrant issued, had a large quantity of cocaine in his apartment was insufficient to establish probable cause to believe that the police would find controlled substances in the defendant's apartment. [140-142]

With respect to a claim that an affidavit in support of a search warrant contained a misrepresentation made knowingly or made with reckless disregard of the truth, a substantial preliminary showing of factual error respecting certain information reported by an informant and included in the affidavit was sufficient to justify a hearing of the type called for in *Franks* v. *Delaware,* 438 U.S. 154 (1978), and, where the record at the hearing supported a finding that the misrepresentation was intentional, the judge correctly ruled that the statement attributed to the informant could not be the basis of a finding of probable cause. [142-143]

INDICTMENTS found and returned in the Superior Court Department on September 14, 1981.

A motion to suppress evidence was heard by *Travers,* J. Following allowance of the Commonwealth's motion for an interlocutory appeal in the Supreme Judicial Court for the county of Suffolk by *O'Connor,* J., the cases were reported by him to the Appeals Court.

The Supreme Judicial Court ordered direct appellate review on its own initiative.

*Charles A. Morano,* Assistant District Attorney, for the Commonwealth.

*Kirk Y. Griffin* for the defendant.

NOLAN, J.  A judge in the Superior Court ruled that an affidavit in support of a search warrant did not establish probable cause to believe that the police would find controlled substances in the defendant's apartment. We affirm.

The defendant, indicted for possession of a class B controlled substance (cocaine) with intent to distribute,[1] and possession of a class D controlled substance (marihuana),[2] moved to suppress all items seized in an allegedly unlawful search. The defendant claimed that the search was unlawful because the warrant affidavit did not establish probable cause to believe that the police would find controlled substances in the defendant's apartment, and the affidavit contained misrepresentations made knowingly or made with reckless disregard for the truth.

After a hearing, the judge made findings of fact and concluded that the affidavit, when examined in light of the evidence adduced at the hearing, failed to establish probable cause to believe that controlled substances would be found in the defendant's apartment. A single justice of this court granted the Commonwealth's application for interlocutory appeal. Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979).

1. *The Affidavit.*

"In the case of a search warrant . . . the affidavit must, in order to establish probable cause, contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched." *Commonwealth* v. *Cefalo,* 381 Mass. 319, 328 (1980), citing *Zurcher* v. *Stanford Daily,* 436 U.S. 547, 554-557 & n.6 (1978). In light of these requirements, we summarize the relevant portions of the affidavit submitted by Officer Charles C. Howard (affiant) of the Nantucket police department.

An unnamed informant told the affiant that the defendant, known to the affiant as a drug dealer, was dealing in

---

[1] G. L. c. 94C, § 32E (*b*) (1), as. appearing in St. 1980, c. 436, § 4.

[2] G. L. c. 94C, § 34.

cocaine and other drugs at a rate of $20,000 a week. The informant indicated that the defendant was operating his business from his apartment. The informant volunteered to "set up" the defendant by purchasing seven grams of cocaine from him. A third party, one Paul Serrey,[3] would act as a middleman between the defendant and the informant.

On the night of the "buy" at 11 P.M.,[4] the affiant handed the informant $625 in cash and observed the informant entering a local restaurant. Detective Gallant, who was seated inside the restaurant, observed the informant giving the money to Serrey. At approximately 11:15 P.M., Serrey left the restaurant and walked up the street. Officer David Smith, who was positioned across the street from the defendant's apartment building, observed Serrey entering the defendant's apartment at 11:22 P.M. and leaving the premises a few minutes later. At 11:30 P.M., Serrey returned to the restaurant. Detective Gallant observed Serrey handing a plastic bag to the informant. At 11:55 P.M., Gallant watched the informant leave the restaurant and then followed him to the affiant. The informant gave the bag, which contained a substance subsequently found to be cocaine, to the affiant.[5] The informant stated that Serrey told him that he (Serrey) had purchased the cocaine from the defendant in the defendant's apartment.

Subsequent to this "buy," the informant arranged a second "buy," this time using one Jane Banzai to make the purchase. On August 9, 1981, the informant gave the affiant three vials of a white, powdery substance which, according to the informant, were obtained from the defendant through Banzai.[6] At this time the informant indicated that the de-

---

[3] The affiant originally believed that the middleman's name was Paul Sheeley. However, as the affidavit recites, the informant subsequently told the affiant that the name was Serrey.

[4] The affidavit is unclear as to the date of this "buy." On the basis of the record, we conclude that the "buy" occurred on August 4, 1981.

[5] Prior to giving the money to the informant, the affiant searched the informant and found him to be "free of any drugs or contraband."

[6] The affidavit does not indicate where this "buy" took place. The affidavit does not disclose the nature of this "white, powdery substance."

fendant had a "supply of cocaine on hand for the asking." On the day the search warrant was issued by a clerk magistrate of the Nantucket Division of the District Court Department, the informant told the affiant that the defendant was then storing a large quantity of cocaine in his apartment.

2. *The Judge's Findings, Rulings, and Order.*

The judge pointed to three statements attributed to the informant which indicated that the police would find drugs in the defendant's apartment. The affidavit recited that the informant said (1) that the defendant was selling drugs from his apartment, (2) that the defendant had a supply of cocaine "on hand," and (3) that the defendant, on the day the warrant issued, had a large quantity of cocaine in his apartment. The judge also noted that the affidavit said that Serrey, the "middleman," told the informant that he, Serrey, had purchased the cocaine from the defendant in the defendant's apartment.

Noting that hearsay may be a sufficient basis for an affidavit in support of a search warrant, the judge applied the two-pronged test set forth by the United States Supreme Court in *Aguilar* v. *Texas,* 378 U.S. 108, 114 (1964).[7] There the Court held that "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" *Id.* See *Commonwealth* v. *Avery,* 365 Mass. 59, 62-63 (1974). See also *Spinelli* v. *United States,* 393 U.S. 410, 415 (1969) (allegations in affidavit corroborating informant's tip may support finding of probable cause). The judge concluded that the affidavit failed to establish the basis of the informant's knowledge that drugs were located on the defendant's premises. Further, the judge concluded that Serrey's statement concerning the presence of drugs in the defendant's apartment was not supportive of a finding of probable cause because, al-

---

[7] See discussion, *infra,* of *Illinois* v. *Gates,* 462 U.S. 213 (1983).

though the affidavit indicated that the basis of Serrey's knowledge was his personal observation, the affiant's testimony at the hearing indicated that, in fact, Serrey never actually told the informant that he (Serrey) had obtained the cocaine from the defendant in the defendant's apartment. According to the affiant's testimony, the informant merely concluded that Serrey must have obtained the cocaine from the defendant in the defendant's apartment.[8]  Thus, the judge held that the Commonwealth failed to satisfy the "basis of knowledge test" established in *Aguilar* v. *Texas, supra*.  Acknowledging that it was unnecessary to treat the issue, the judge examined whether the Commonwealth established Serrey's credibility or the reliability of his information.  Reasoning that a declaration against penal interest is not sufficient of itself to establish credibility or reliability, the judge found that the statement in the affidavit corroborating Serrey's information was severely discredited at the hearing and, therefore, he concluded that the Commonwealth failed to establish Serrey's credibility or the reliability of his information.[9]  Accordingly, the judge concluded that the affidavit did not establish probable cause and allowed the defendant's motion to suppress.

3. *Analysis*.

Subsequent to oral argument in this case, the United States Supreme Court decided *Illinois* v. *Gates*, 462 U.S. 213 (1983).  In that case, the Court decided to abandon the "two-pronged test" established by *Aguilar* v. *Texas, supra*, and *Spinelli* v. *United States, supra*.  The following language in *Illinois* v. *Gates, supra* at 238-239, is controlling: "In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations.  See *Jones* v. *United States*, [362 U.S. 257, 271 (1960)]; *United States* v. *Ventresca*, 380 U.S. 102

---

[8] The judge found that the informant, referring to the cocaine obtained from Serrey, said to the affiant, "He (Serrey) got it from Honneus.  I know he got it from Honneus."

[9] The judge did not examine the credibility of the informant or the reliability of his information.

[, 108] (1965); *Brinegar* v. *United States*, 338 U.S. 160 [, 176] (1949). The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. *Jones* v. *United States*, [*supra*] at 271. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*." The court points out that the abandonment of the two-pronged test of *Aguilar* does not signal an end to judicial scrutiny of warrant affidavits. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 239. Thus, it is still good law that "[t]o justify the intrusion of . . . [a] search . . . [the informant] must be shown to be relying on something more than a casual rumor or an individual's general reputation." *Commonwealth* v. *Avery*, 365 Mass. 59, 63 (1974). However "when we move beyond the 'bare bones' affidavits . . . this area simply does not lend itself to a prescribed set of rules, like that which had developed from *Spinelli*." *Illinois* v. *Gates*, *supra* at 239.

Turning to the affidavit in this case, we agree with the Superior Court judge that the three statements attributed to the informant could not pass constitutional muster, even under the analysis set forth in *Illinois* v. *Gates*. There is nothing in the affidavit which indicates the basis of the informant's knowledge that controlled substances were located in the defendant's apartment. Cf. *Illinois* v. *Gates*, *supra* at 238 (magistrate should look at all circumstances, including the "'veracity'" and "'basis of knowledge'" of informants). Thus, we conclude that the three statements are

the type of "bare bones" assertions on which no magistrate could find probable cause.

Consequently, only the statement attributed to Serrey remains in the probable cause equation. However, on the evidence adduced at the hearing, the judge concluded that the informant never told the affiant that Serrey said he had obtained the cocaine from the defendant in the defendant's apartment. Ruling that the Commonwealth failed to establish the basis of Serrey's knowledge, the judge ruled that his statement could not be the basis of a finding of probable cause.

Once a defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978). See *Commonwealth* v. *Reynolds*, 374 Mass. 142, 146-150 (1977). If, after a hearing is held, the charge of making a knowingly false statement or a statement in reckless disregard of the truth is established, and, with the affidavit's false material set aside, the affidavit is insufficient to establish probable cause, the fruits of the search must be excluded. *Franks* v. *Delaware, supra*. In *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764 (1981), we declined an invitation to interpret art. 14 of the Declaration of Rights of the Constitution of the Commonwealth so as to require the suppression of evidence seized pursuant to a warrant where the affidavit contained a negligent misrepresentation of a material fact. *Id.* at 771.

Thus, it is only in the limited circumstances of an intentional or reckless misrepresentation of a material fact that constitutional principles compel the exclusion of evidence seized pursuant to a search warrant. In this case we conclude that the judge was justified in conducting a *Franks* hearing because the defendant, by affidavit, made a "sub-

stantial preliminary showing," as required by *Franks, supra*
at 155. After the hearing, the judge could exclude the fruits
of the search only if he found that the warrant affidavit con-
tained a deliberate or reckless misrepresentation of a mate-
rial fact and only if the sanitized affidavit did not support a
finding of probable cause. Although the judge did not ex-
plicitly characterize the misrepresentation he found in the
affidavit, we conclude that he in fact determined that the
misrepresentation was intentional. The record supports
this finding. Specifically, the record indicates that the affi-
ant testified that the informant said to him, "He (Serrey) got
it from Honneus. I know he got it from Honneus."

Thus, we conclude that the judge was correct in his exci-
sion of Serrey's statement. Further, we conclude that the
judge was correct in ruling that the sanitized affidavit does
not support a finding of probable cause.[10]

*Order affirmed.*

---

[10] *Illinois* v. *Gates*, 462 U.S. 213 (1983), does not alter this result.