COMMONWEALTH *vs.* JONATHAN SINGER.

No. 90-P-518.

Suffolk. September 13, 1990. - January 16, 1991.

Present: DREBEN, KAPLAN, & PORADA, JJ.

*Search and Seizure*, Affidavit, Probable cause. *Constitutional Law*, Search and seizure, Probable cause. *Probable Cause. Practice, Criminal*, Disclosure of identity of informer. *Identification.*

A defendant in a criminal case failed to make the substantial preliminary showing that an affiant had made false statements concerning a confidential informant intentionally or recklessly as required by *Franks* v. *Delaware*, 438 U.S. 154 (1978), to entitle him constitutionally to a *Franks* hearing [713-716]; furthermore, this court declined to consider either a contention by the defendant, relying on *Commonwealth* v. *Amral*, 407 Mass. 511 (1990), that he had asserted sufficient facts to entitle him to an in camera hearing to determine whether he had a right to a *Franks* hearing, or the question whether *Amral* is even applicable to this case (having been decided subsequent to the rulings being appealed) where, even if the material provided by the informant, whose information provided the basis for the issuance of a search warrant, were excised, the remaining portion of the affidavit in question would be sufficient for a finding of probable cause [716].

INDICTMENT found and returned in the Superior Court Department on July 17, 1987.

Pretrial motions were heard by *Robert A. Mulligan*, J., and *Guy Volterra*, J. The case was heard by *Walter E. Steele*, J.

*Harold H. Hakala* for the defendant.

*Jane A. Donohue*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. On October 9, 1986, the defendant, Jonathan Singer, was stopped in his automobile and advised that the drug control unit of the Boston police department had a warrant to search his apartment on the first floor, right-hand side, of 38 Spring Park Avenue, Jamaica Plain. Singer ac-

Commonwealth *v.* Singer.

companied Officer Murray and other drug control unit officers to his apartment (in a building of four apartments) and unlocked the door. Once in the living room, one of the officers, Officer Geary, pushed a blank wall at the left-hand side of the fireplace; the wall lifted up, "like an elephant trunk," revealing a secret passageway to the basement. The police descended and, in a locked room in the basement opened with the defendant's keys, discovered cocaine (later determined to weigh 116.10 grams) and drug paraphernalia. Money was found in a locked safe. The defendant was arrested and subsequently convicted in a jury-waived trial on an indictment charging him with trafficking in cocaine.[1]

In his appeal, the defendant claims that he made a substantial preliminary showing that the confidential informant whose information provided the basis for the issuance of the search warrant did not exist and that he was entitled to an evidentiary hearing under *Franks* v. *Delaware*, 438 U.S. 154 (1978). He also claims that even if a *Franks* hearing was not required, his request for an in camera hearing should have been granted under *Commonwealth* v. *Amral*, 407 Mass. 511, 522-523 (1990), since he had asserted facts casting "reasonable doubt on the veracity of material representations made by [the officer in his affidavit supporting the warrant] concerning a confidential informant." We affirm the conviction.

The affidavit in support of the search warrant, set forth in its entirety in the appendix, was signed by Officer Joseph Geary. It alleged that Geary was experienced in drug investigations and had participated in approximately 400 arrests involving cocaine; that he had information from a confidential and reliable informant who had provided him with information in the last six months which had led to the arrest of one Stanley Strouble for trafficking in cocaine and a seizure of

---

[1]Since this appeal involves rulings by two motion judges prior to trial, we do not rely on facts developed at trial. *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 126, 132 (1981), and cases cited. To the extent that we recount some of the evidence at trial, we do so merely to give context to the legal issues before us.

cocaine, and with information which had led to the arrest of Eddie Reynolds for possession of cocaine with intent to distribute, resulting in a seizure of cocaine and a conviction; that the informant told him that the defendant was selling cocaine in various quantities from the first floor right-side apartment at 38 Spring Park Avenue, Jamaica Plain, and from a room in the cellar which contained a safe; that the informant was physically present when a white male purchased cocaine in that apartment and that he saw the white male make an additional purchase of cocaine which was taken from a locked safe in a locked room in the cellar. Based on this information, Officer Geary asserted that he and other members of the drug control unit set up observations of 38 Spring Park Avenue; that Geary observed individuals known to him to be involved in cocaine dealing enter that building and depart within a few minutes; that he saw the defendant, who had become known to Geary through police records, photographs, and other investigative means, enter a 1978 Lincoln automobile registered to him which was parked in the driveway of 38 Spring Park Avenue; that Geary followed the vehicle to the intersection of St. James Avenue and Berkeley Street; that he saw a white male, approximately 5' 6" tall, weighing 150 pounds, approach the Lincoln, converse with the defendant, and hand him money; that he observed the defendant take out a small clear wrapper containing a white substance and hand it to the white male; and that based on his experience as a narcotics investigator, he believed that the incident was a drug transaction.

The application was successful, and a warrant issued authorizing a search for, inter alia, cocaine, keys, money, and drug paraphernalia in:

> "all rooms, closets and storage areas inside the first floor right side apartment, located at 38 Spring Park Avenue . . . , a large floor model safe . . . and the room in the cellar . . . in which the large floor model safe is located. And all common areas inside 38 Spring Park Avenue which the occupants of the first floor right side apartment have access to including the cellar."

On execution of the warrant, the police, as recited earlier, found drugs and other incriminating material.

Prior to trial, the defendant moved for an "evidentiary *Franks* hearing" and for the disclosure of the identity of the unnamed informant. *Franks* v. *Delaware*, 438 U.S. at 155-156, held that if a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." See also *Commonwealth* v. *Honneus*, 390 Mass. 136, 142 (1983). If the defendant makes the requisite showing at such a hearing, and if the remaining content of the affidavit after the offending material is excised is insufficient, the "search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks* at 156.

The defendant made three attempts before two motion judges to receive a *Franks* hearing. Using the two arrests listed in Geary's affidavit as a starting point, counsel for the defendant examined the affidavits in support of search warrants for those two cases and found therein the names of persons whose criminal activities appear to have been revealed by the same informant. At the time of the first argument on the defendant's motion (October 27, 1988), counsel's investigation disclosed that the informant apparently had provided information leading to nine seizures of drugs and arrests for possession and trafficking of cocaine and marijuana. Counsel urged that the data provided involved so many diverse socioeconomic backgrounds and geographical areas that it was implausible that the information came from only one informant. In addition, counsel argued that the claim that the informant had led to the arrest and seizure of drugs relating to William Papageorge was knowingly false[2] because Geary's

---

[2]Geary's affidavit in the case at bar attributed reliability to the informant, among other things, by reason of information leading to a seizure of

own testimony at the grand jury hearings prior to Papageorge's indictment indicated that no informant was involved in that case. The defendant's motion was accompanied by the Papageorge grand jury minutes, four search warrants, a chart showing interrelations among the persons named in the various affidavits, and an affidavit of counsel.

After taking the matter under advisement, the first motion judge denied the defendant's request, concluding that there was nothing remarkable about one informant's presence at drug deals in Jamaica Plain, Mattapan, Dorchester, and the South End over the course of a year, as the informant could be a supplier to those locations. The judge also noted (correctly) that the defendant had provided no evidence regarding the socioeconomic diversity of the people arrested. As to the Papageorge grand jury minutes, the judge concluded that at least three persons were in a position to have acted as an informant. More will be said about the Papageorge case later on.

Buttressed by adverse publicity concerning police practices in the Boston Globe in March, 1989, in connection with the Lewin case, see the subsequent opinion in *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989), the defendant, on April 12, 1989, sought reconsideration of the judge's ruling. He presented the results of additional investigation showing that fifteen more affidavits appeared to rely on the same informant. These affidavits were submitted to the judge as well as a chart purporting to show that the informant here relied upon had given information leading to more than thirty arrests.[3] The Papageorge transcript of trial was also included. The motion for reconsideration was denied without a hearing.

The defendant next brought the matter before a second motion judge, arguing this time that although the informant probably existed (the description of the apartment was too

---

drugs and the arrest of Eddie Reynolds; in Geary's affidavit in support of the search warrant for the premises of Eddie Reynolds, the attribution of reliability to the informant was based in part on the seizure of drugs and the arrest of William Papageorge.

[3] The police in some of these cases effected multiple arrests.

accurate to be invented), his prior track record was misrepresented in order to procure the warrant. Counsel again pointed to the Papageorge transcript and the similarity of language in the warrants. The second judge ruled that there had been no substantial preliminary showing as required by *Franks*.

1. *Right to a "Franks hearing."*

To substantiate his claim that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in Geary's affidavit, the defendant, in this appeal, refers to the Papageorge case and also to the large number (approximately twenty) of affidavits appearing to rely on the same informant. See *Commonwealth* v. *Lewin*, 405 Mass. at 582. His showing is insufficient.

We turn to the facts as appearing in the Papageorge trial transcript. Papageorge rented a car from Hertz on September 24, 1985, to be returned on October 1. The Hertz car control office was notified on October 15, 1985, by a representative of the Copley Place public parking facility that the Hertz car had been in the same space in that facility for more than twenty days and that the facility wanted it removed. It was suggested that the managers believed the parking fees would not be paid. When the car was brought to the Hertz distribution center on McLellan Highway on October 16, two gym bags were found in the trunk. The next day, October 17, a person identifying himself as William Papageorge appeared at the downtown Hertz office, spoke by telephone to Michael Creane, the station manager at the McLellan Highway office of Hertz, and informed him that there were bags in the car of concern to him. Creane arranged with Papageorge that the bags would be sent to the downtown Hertz office so that they could be picked up. Creane, following what he claimed to be a routine procedure, opened the bags and found that they contained plastic wrappers with white powder. He called his supervisor, who in turn asked another witness to look at the contents. The security manager for Hertz was informed of the suspected contraband and called the police. When an employee of Papageorge

came to pick up the drugs, later determined to contain 813 grams of cocaine, police detectives, including Officer Geary, were on hand.

While no informant is mentioned at the Papageorge trial, numerous persons were aware that the gym bags were found. As the judge in that case noted, it was an extraordinary "co-incidence" that on the day after the car was towed to Hertz and the bags found, Papageorge called about the contents of a car abandoned for twenty days in a public garage. It is not unlikely that Papageorge's "fortuitous" appearance at the Hertz office was at the suggestion of someone helpful to the police. Without Papageorge's voluntary involvement, there probably would not have been enough evidence to link him to the drugs. That a confidential informant assisted the police appears far from a reckless or false statement.

Nor do twenty affidavits based on information from one informant provide the substantial preliminary showing of intentional or reckless falsity required by *Franks*. In *Commonwealth* v. *Lewin*, *supra*, upon which the defendant relies, there was far more evidence of perjury than the mere number of applications (thirty-one) for search warrants. There were sworn repudiations of the existence of the confidential informant by three police officers. 405 Mass. at 582. See *id.* at 591 n.3 (Liacos, C.J., dissenting), doubting that an affidavit which relies on an informant who supplied information leading to thirty warrants would be deemed invalid on its face. See also *Commonwealth* v. *Robinson*, 403 Mass. 163, 164, 165 (1988) (twenty-five arrests and fifteen convictions); *Commonwealth* v. *Santana*, 403 Mass. 167, 168, 170 (1988) (thirty tips from same informant).

We also base our conclusion that the defendant was not entitled to a *Franks* hearing on the circumstance that if the material provided by the informant were excised, the remaining portion of the affidavit detailing police corroboration is sufficient for a finding of probable cause. Officer Geary personally observed individuals known to him to be involved in cocaine dealing enter 38 Spring Park Avenue and leave within a few minutes, thus suggesting a drug operation. See

*Commonwealth* v. *Hall*, 366 Mass. 790, 798 (1975); *Commonwealth* v. *Parapar*, 404 Mass. 319, 323 (1989). Geary's observations are probative even though he observed only the main entrance and not the defendant's particular apartment. See *Commonwealth* v. *Valdez*, 402 Mass. 65, 71 n.4 (1988). Geary also saw the defendant engage in what he, an experienced narcotics investigator, believed to be a drug transaction. It was reasonable to assume that drugs, drug paraphernalia, and money, the items specified in the warrant and seized, would be located in the residence of a person engaged in drug transactions. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). The designation in a search warrant of the name of the occupant of the apartment to be searched is generally sufficient to identify the unit.[4] See *State* v. *Cortman*, 251 Or. 566, 569 (1968), cert. denied, 394 U.S. 951 (1969); *Manley* v. *Commonwealth*, 211 Va. 146, 151-152 (1970), cert. denied, 403 U.S. 936 (1971). See also *State* v. *Kyles*, 513 So.2d 265, 270 (La. 1987), cert. denied, 486 U.S. 1027 (1988); *State* v. *DeLaurier*, 533 A.2d 1167, 1171 (R.I. 1987); 2 LaFave, Search and Seizure § 4.5(b), at 217 (2d ed. 1987). In any event, there was here no possibility of error or reason to apply the exclusionary rule, as the defendant led the officers to the apartment and admitted them. *Commonwealth* v. *Petrone*, 17 Mass. App. Ct. 914, 915 (1983). Although there was not independent probable cause, without the informant's' data, to search the cellar, this was not necessary where, as here, the search was of an area to which Singer (and, perhaps, no others) had access and which was reasonably capable of containing the objects of the search. See *Commonwealth* v. *Signorine*, 404 Mass. 400, 404-405 (1989); *Commonwealth* v. *Pacheco*, 21 Mass. App. Ct. 565, 567-568 (1986). See also *Commonwealth* v. *Scala*, 380 Mass. 500, 508-509 (1980). Compare *Commonwealth* v. *Hall,* 366 Mass. 790, 791, 798-800 & n.11 (1975).

---

[4]As indicated earlier, Geary stated in the affidavit that the name of the person observed by him was obtained from police records and photographs, registry inquiries, and other investigative techniques.

Commonwealth v. Singer.

## 2. *Right to an "Amral hearing."*

Relying on *Commonwealth* v. *Amral*, 407 Mass. at 522-523, the defendant also argues that even if he is not entitled to a *Franks* hearing, he has cast sufficient doubt to have a hearing to determine whether he has a right to such a hearing. In *Amral*, at 522, the Supreme Judicial Court, departing from former rulings,[5] held "that the public interest in deterring police misconduct requires the trial judge to exercise his or her discretion to order an in camera hearing where the defendant by affidavit asserts facts which cast a reasonable doubt on the veracity of material representations made by the affiant concerning a confidential informant." We need not reach the question whether the defendant has asserted sufficient facts to trigger such a hearing or whether *Amral* is applicable (having been decided subsequent to the rulings being appealed) because of our holding that the remaining portion of the Geary affidavit supports a finding of probable cause. Since the purpose of the *Amral* hearing is to determine the right to a *Franks* hearing, if the latter is not necessary for a reason apart from the alleged misrepresentations (i.e., because there is independent probable cause), no *Amral* hearing is required.

*Judgment affirmed.*

---

[5]Prior to *Amral*, the judge, in his or her discretion, could hold such a hearing but was not required to do so. See *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 775 n.12 (1981); *Commonwealth* v. *Douzanis*, 384 Mass. 434, 440, 443 (1981); *Commonwealth* v. *Valdez*, 402 Mass. at 69; *Commonwealth* v. *Ramos*, 402 Mass. 209, 216 (1988); *Commonwealth* v. *Signorine*, 404 Mass. at 407. See also *Commonwealth* v. *Abdelnour*, 11 Mass App. Ct. 531, 536 n.5 (1981).

APPENDIX

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Joseph Geary, am a Boston Police Detective assigned to the Drug Control Unit. The date of this Affidavit In Support of Application for a Search Warrant is October 9, 1986. I have been employed as a Boston Police Officer for the past eightteen [*sic*] years, the last three of which, I have been assigned to the Drug Control Unit. During my years of experience, I have participated in approximately 500 arrests for violations of the Controlled Substance Act, of which, approximately 400 arrests have involved the controlled substance, cocaine. Many of these cocaine arrests are the result of information I received from reliable informants. I have also attended and received training at various narcotic seminars, conventions, and academies. I have information based upon a confidential and reliable informant, who has been reliable in the past six months by providing me with information which led to the arrest of Stanley Strouble for Trafficking in Class "B" (Cocaine), the seizure of cocaine, and the case now pending in Suffolk Superior Court. This informant has also provided me with information in the past six months that led to the arrest of Eddie Reynolds for Possession of Class "B" (Cocaine) with Intent to Distribute, the seizure of Class "B" (Cocaine) and a Guilty finding for Unlawful Possession of Class "B" (Cocaine) in Boston Municipal Court. This informant, hereinafter referred to as "IT", now tells me that a white male, known to "IT" as John Singer, is selling Class "B" (Cocaine) in various quantities from the first floor right side apartment which is located at 38 Spring Park Avenue, Jamaica Plain and from a room, located within the cellar of 38 Spring Park Avenue, Jamaica Plain, which contains a tall floor model safe, where "IT" tells me the cocaine is stored. "IT" describes John Singer as a white male, approx. 39 years of age, approx. 5'5, 140 lbs., with brown hair and brown eyes. "IT" further tells me that within the past three days, "IT" was physically present at the door to the first floor right side apartment located at 38 Spring Park Avenue, Jamaica Plain, when a third individual described as a white male in his early twenties knocked on the door to the first floor right side apartment. "IT" tells me that the door to the first floor right side apartment was opened by the individual known to "IT" as John Singer. "IT" further relates that the white male caller in his early twenties stated to John Singer, "I need to get an eight-ball and a sixteenth." "IT" states that John Singer allowed the white male caller in his early twenties and "IT" inside the first floor right side apartment and closed the door behind them. "IT" further relates that John Singer accepted $350.00 U.S. Currency from the white male caller in his early twenties, counted it out loud, reached inside his shirt pocket, took out a small clear plastic wrap containing white powder and handed the small clear plastic wrap with whit [*sic*] powder to the white male caller in his

early twenties. "IT" also tells me that John Singer then stated out loud, "Follow me, I'll have to get the eight-ball downstairs." "IT" further relates that "IT" followed John Singer and the white male caller in his early twenties down a staircase, located inside a front room of the first floor right side apartment, into the cellar of 38 Spring Park Avenue, Jamaica Plain, Mass. "IT" goes on to state that once in the cellar, John Singer turned left, walked over to a door, opened it with a key and walked inside followed by the white male caller in his early twenties and "IT." Once inside this room, "IT" tells me that John Singer walked over to another door, opened it, and walked inside — again followed by the white male caller in his early twenties and "IT." "IT" further relates that once inside this second room, John Singer walked over to a large floor model safe with a combination lock. "IT" goes on to say that John Singer opened this tall safe by turning the combination dial. "IT" states that John Singer then opened the door to the safe, reached inside, took out a clear plastic wrap containing white powder and handed it to the white male caller in his early twenties while stating out loud, "This is a strong eight-ball. He also got ounces of some of the best blow around selling for 16 hundred bucks." "IT" further tells me that in the vernacular of cocaine users and dealers that 'blow' is slang for cocaine and that 'eight-ball' is slang for one-eighth of an ounce of cocaine.

As a result of the information I received, myself and other members of the Drug Control unit at divers [*sic*] times in the past two weeks and most recently within the past three days have set up observations of 38 Spring Park Avenue, Jamaica Plain, Mass. During these periods of observations, I have observed individuals, some of whom are known to me to be involved in cocaine dealing, enter 38 Spring Park Avenue and depart within a few minutes. I have also observed the individual described above as being a white male, approx. 39 years old, approx. 5'5, 140 lbs., brown hair and brown eyes, enter and exit from 38 Spring Park Avenue. During one of these periods of observation, on Monday, October 6, 1986, I observed the above described individual, who has become known to me through police records and photographs, registry inquiries, utility checks, as well as other investigative techniques, as Jonathan M. Singer, exit from 38 Spring Park Avenue shortly after 2:30 P.M., enter a grey 1978, 2 door Lincoln bearing Mass. plate 347-JRV, which was parked in the driveway of 38 Spring Park Avenue. My investigation revealed that this vehicle was registered to a Jonathan M. Singer. I followed this vehicle, operated by the individual known to me as Jonathan M. Singer, from 38 Spring Park Avenue to the intersection of St. James Avenue and Berkley [*sic*] Street, where the vehicle pulled over and stopped. At approximately 3:00 P.M., a white male, approximately 5'6, 150 lbs., in his mid-twenties, with brown hair and clad in a brown cordoroy [*sic*] sport jacket, approached the grey Lincoln, and began to converse with Jonathan M. Singer through the open driver's window. Moments later, I observed the individual in the brown sport jacket,

reach into his pant's pocket, take out U.S. Currency and offer it to Jonathan M. Singer through the open driver's window. I then observed the individual, known to me as Jonathan M. Singer, accept the U.S. Currency, reach into his own shirt pocket, take out a small clear wrap containing a white substance and give it to the individual in the brown sport jacket. The white male in the brown sport jacket accepted the clear wrap containing [the] white substance, examined it briefly, put it into his pant's pocket and walked away. Based upon my experience as a narcotics investigator, the information supplied to me by my confidential and reliable informant, and having observed dozens of similar transactions which have proven to be cocaine transactions, it is my belief that the incident I witnessed on Monday afternoon at St. James Avenue and Berkley [*sic*] Street — and which I have related above, was a drug transaction.

As a result of the information I received from this confidential and reliable informant and based upon my own observations, it is now my belief that cocaine is being stored and sold from the first floor right side apartment located at 38 Spring Park Avenue, Jamaica Plain, and from a room in the cellar of 38 Spring Park Avenue which contains a large floor model safe.

Printed Name of Affiant  
    Joseph C. Geary

Sworn and Subscribed to Before  
    S/Roger B. Gill

Signed under Penalties  
    of Perjury

S/Joseph C. Geary  
10-9-86