Toomey, J.
INTRODUCTION
Defendant has moved to suppress all evidence, real and testimonial, obtained as a consequence of the police conduct in stopping defendant’s motor vehicle and seizing certain items. The motion was heard on January 23, 1997, and, based on the evidence there adduced, I enter the following findings of fact.
FINDINGS OF FACT
1. At about 9:00 P.M. on May 17, 1996, LT. Richardson of the Worcester Police Department received a telephone call from an unidentified caller. The caller’s message was in substance as follows:
Do you want to make a drug bust? A blue Subaru, driven by a white male, whose name is John, will meet an Hispanic, whose name is Jose, at Ernie’s Car Wash on Grove Street. There will be a sale of two “8 balls” and a $50 rock.
*460 LT. Richardson had no sense of the reliability of the anonymous caller or the basis of his knowledge. The call did not further describe “Jose” or the vehicle he would be driving.
2. LT. Richardson immediately proceeded to a surveillance location across Grove Street from the car wash. Other police officers, at the direction of LT. Richardson, assembled at a number of surveillance locations in the area.
3. SGT. Brooks, Massachusetts State Police, was positioned to the rear of the car wash behind a stockade fence. There were gaps in the fence through which he could survey the rear of the car wash and its paved back lot. His view was unobstructed and the area was well-lit. SGT. Brooks was, by training and experience, very knowledgeable with respect to the recognition of controlled substances and the common characteristics of drug transactions. During his fourteen year career, he had made over eight hundred arrests of controlled substance law violators, over ninety percent of which involved cocaine. He had experience dealing with informants and had done undercover work, including about one hundred instances in which he made “buys.”
4. At approximately 9:15 P.M., SGT. Brooks observed a blue Subaru enter the back lot of the car wash. The driver was a white male. The vehicle came to a stop near the vacuum cleaner machines behind the car wash and about fifty feet from SGT. Brooks’ position. The white male sat in the vehicle for a period of time and gazed about the back lot. Finally, he exited from the blue Subaru and picked up a vacuum hose. The white male did not insert money into the receptacle or otherwise activate the vacuum cleaner. He carried the hose to the vehicle and again peered around the area for about foriy-five seconds. He did not apply the hose to the vehicle’s interior. Finally, the white male dropped the hose to the pavement and re-entered the blue Subaru. He remained inside, looking around for another thirty to forty seconds, until a blue Isuzu entered the back lot and parked near the vacuum cleaners, ten feet from the blue Subaru. The tinted windows of the Isuzu made surveillance of its occupants impossible.
5. SGT. Brooks saw the white male exit from the Subaru and approach the Isuzu. The white male conversed with the male operator through the open driver’s window of the Isuzu for about five seconds. The white male then reached into his pocket, extracted a folded wad of currency and handed it through the window to the Isuzu operator. The operator brought his hand, palm upward, to the level of the window; in the hand were lolly-pop shaped, knotted baggies containing white powder. The white male took the baggies from the hand of the Isuzu operator. SGT. Brooks notified his colleagues, by radio, that the transaction had been accomplished and directed that they “move in.”
6. Worcester Police Officer Oquendo had been posted across Grove Street from the car wash. He responded to SGT. Brooks’ order by driving to the front lot of the car wash; the Subaru was proceeding to the front of the car wash and Oquendo positioned his vehicle to block the Subaru’s departure. He observed the Subaru’s operator make a downward gesture with his hands toward the floor of the Subaru. Officer Oquendo commanded the operator to exit from the Subaru.
7. As the operator complied with the exit order, Oquendo’s partner, Trooper Peasley, gazed, from outside the Subaru, into the Subaru, the interior lights of which were illuminated, and saw three items resting on the center console between the front seats. Trooper Peasley, a veteran of about one hundred arrests of controlled substance law violators and numerous undercover “buys,” recognized the items to be packages containing cocaine. He seized the three items. Oquendo arrested the operator for a controlled substance law violation. The operator said, not in response to any interrogations, “I saw the officers and threw the stuff onto the console.”
8. Officer Oquendo was able to see the person who had, by this time, exited from the Isuzu. The person was in the custody of a State Police Trooper who told Oquendo that the person had identified himself as “Carlos.” Oquendo, who was familiar with the person, having lived in the same area of Worcester and attended school with him over a period of about seventeen years, responded, “That’s not his name.” Oquendo recognized the person to be Jose Sotto (hereinafter the defendant).
9. The trooper advised the defendant of his Miranda rights in English. The defendant did not respond. Oquendo — who was fluent in Spanish, had advised other suspects in Spanish of their Miranda rights on about thirty occasions and had served as a Spanish interpreter for the police on more than fifty occasions — informed defendant, in Spanish, of his Miranda rights. Defendant nodded in response to the advisement. [1]
10. Using Spanish, Oquendo addressed the defendant: “Where are the drugs and money.” Defendant replied, in Spanish: “She [pointing to a female seated in the Isuzu] has the drugs, but she has nothing to do with them.” Oquendo then seized cocaine from the female. During his exchange with Oquendo, defendant was friendly and spoke a mix of English and Spanish. The area was well lit by the car wash’s lamps.
11. Worcester Police Officer Tatum searched the Isuzu after defendant had been placed in custody for a controlled substance law violation. He found a black pouch on the seat of the Isuzu. Tatum opened the pouch and seized currency in the amount of one thousand, nine hundred and seventy dollars ($1,970.00).
*461 DISCUSSION
1.Probable Cause to Arrest the Defendant
Usually, in order to comply with the Fourth Amendment to the United States Constitution and article 14 of the Massachusetts Declaration of Rights, an arrest and search executed in reliance upon an informant’s tip must meet the two-pronged standard of probable cause set forth in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969). See also, Commonwealth v. Cast, 407 Mass. 891, 896 (1990). To satisfy the Aguilar-Spinellitest the Commonwealth must show; (1) Some underlying circumstances from which the law enforcement officials could have concluded that the information was reliable, and (2) some underlying circumstances which demonstrate a basis of the informant’s knowledge. Cast, 407 Mass. at 896. At bar, the informant’s tip is, concededly, inadequate under the aforementioned tests. That circumstance does not, however, end our inquiry.
“Probable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense.” Commonwealth v. Storey, 378 Mass. 312, 321 (1979). The facts of the case at bar demonstrate that the defendant was committing a crime when observed by Sgt. Brooks from behind the fence. Those facts include the furtive actions of the white male, feigning the operation of the vacuum and gazing about the parking lot, and the exchange of currency for what appeared to be packages containing narcotics. Additionally, the fact that an officer with extensive knowledge of the trade of controlled substances concluded that the transaction was a drug sale by the defendant suggests the probability of the conclusion. See Commonwealth v. Johnson, 32 Mass.App.Ct. 355, 358-59 (1992), review denied 412 Mass. 1105 (1992) (an important factor in determining probable cause was that experienced police officers observed what they stated were drug transactions), United States v. White, 655 F.2d 1302, 1303-13049 (D.C. Cir. 1981) (probable cause established when a police officer, experienced in narcotics investigation, saw a woman who was a passenger in an automobile receive from the driver, in exchange for money, a small, unidentified object which she then delivered to the defendant for money).
When, as at bar, an experienced police officer observes the defendant exchanging objects, resembling packets containing narcotics, for currency, there is probable cause for the subsequent arrest and search. Commonwealth v. River, 27 Mass.App.Ct. 41, 42, 45-46 (1989). The failure of the instant anonymous informant’s tip to satisfy the Aguilar — Spinelli standard was, therefore, remedied by the direct observations of Sgt. Brooks which serve as an adequate source of probable cause. Commonwealth v. Avery, 365 Mass. 59 (1974); see also Smith, Criminal Practice and Procedure, 30 Mass. Prac., Section 113 n.l.
2.Defendant’s Miranda Rights
The defendant’s admissions regarding the drugs were voluntarily made after a knowing and intelligent waiver of his rights secured by Miranda v. Arizona, 384 U.S. 436, 475 (1966). Because the defendant’s outward manifestations (lack of response) suggested that he did not understand English, the police officers took special care to ensure that the defendant understood and comprehended the Miranda warnings by providing Officer Oquendo as an interpreter. Commonwealth v. Garcia, 379 Mass. 422 (1980). Compare Commonwealth v. Colon-Cruz, 408 Mass. 533, 539 (1990) (translation into Spanish of Miranda warnings by a police officer was adequate to communicate the content of the Miranda warnings). The fact that Officer Oquendo effectively delivered the warnings to the defendant is supported by the record of his service as a Spanish interpreter on more than fifty occasions. The advisement was, therefore, constitutionally compliant.
In response to the advisement of his rights, the defendant nodded. The police may infer from the defendant’s outward behavior that he understands his rights, waives them, and wishes to talk. Garcia, 379 Mass. at 399. The facts found, supra, are persuasive that the defendant’s admissions regarding the location of the drugs and money were adequately supported by both an effective advisement of Miranda warnings and a constitutional waiver thereof.
3.The Search of Another and Seizure of Controlled Substances
The defendant had standing to object to the search and seizure of cocaine from the female because, when a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of the offense, the defendant is deemed to have standing to contest the legality of the search and seizure of that evidence. Commonwealth v. Amendola, 406 Mass. 592, 596-601 (1990). We must, therefore, determine whether the search of the female was lawful. If so, defendant cannot prevail upon his demand that the fruits of that search be suppressed.
Upon the admission by the defendant that the female “has the drugs,” the police officers had probable cause to arrest the female. Commonwealth v. Avery, 365 Mass. 59 (1974). A lawful arrest justifies the contemporaneous search without a warrant of the person arrested and of the surrounding area. New York v. Belton, 453 U.S. 454, 457 (1981), citing Chimel v. California, 395 U.S. 752, 763 (1969). “A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to arrest *462 requires no additional justification.” United States v. Robinson, 414 U.S. 218, 235 (1973).
In this case the drugs were seized in a search incident to the arrest of the female. The arrest was lawful because, grounded as it was on the officers’ observations and the admission by the defendant that she possessed the drugs, the arrest was supported by probable cause. The product of the incidental search is, therefore, admissible.
4. Warrantless Search of Defendant’s Vehicle and Seizure of Currency
Because the defendant’s blue Isuzu was stopped in a public place with probable cause, the inherent mobility of the vehicle provided a sufficient basis for a warrantless search and no more exigent circumstances are required by the Massachusetts Declaration of Rights or the United States Constitution. Commonwealth v. Motta, 424 Mass. 117 (1997). Probable cause to arrest existed at the time Sgt. Brooks observed the suspected drug transaction through the fence to the rear of Ernie’s Carwash. Gerstein v. Pugh, 420 U.S. 103 (1975) (probable cause to arrest exists where the facts and circumstances in the arresting officer’s knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed).
Because the inherent mobility of an automobile constitutes exigency and because an individual has a lesser expectation of privacy in an automobile, Massachusetts courts have relaxed the rule that only an actual exigency will excuse the omission to obtain a warrant for the search of an automobile; no additional demonstration of exigency need be made. Motta, 424 Mass. at 123. In the present case, therefore, a sufficient basis for the warrantless search exists by reason of the probable cause supplied by Sgt. Brook’s observations and the inherent mobility of the defendant’s vehicle. The seizure of the currency from the blue Isuzu was, accordingly, constitutionally consistent.
CONCLUSION
Probable cause for the arrest of the defendant was established by the direct observations of Sgt. Brooks. The defendant’s admissions, after adequate advisement and waiver of Miranda warnings provided probable cause for the search incident to the arrest of the female, the product of which is, therefore, admissible. The warrant-less search of the defendant’s blue Isuzu was justified by the probable cause established through the observations of Sgt. Brooks and by the inherent mobility of the defendant’s automobile. Accordingly, the motion to suppress evidence, real and testimonial, obtained as a result of the arrest and search at Ernie’s Car Wash on Grove Street is DENIED.

 defendant stipulated, at the hearing of the motion, that he understood the Miranda rights thus communicated to him. Defendant expressly refused to stipulate, however, that he had waived those rights.