COMMONWEALTH *vs.* FREDERICO RAMIREZ.

Suffolk. April 5, 1993. - August 5, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure*, Affidavit, Probable cause. *Probable Cause. Constitutional Law*, Search and seizure, Probable cause. *Practice, Criminal*, Disclosure of identity of informant, Conduct of government agents, . New trial.

Discussion of the postconviction remedy available to a criminal defendant who challenges the veracity of representations made in an application for a search warrant that led to the. seizure of evidence introduced against him at his trial. [47-50]

A postconviction showing by a criminal defendant that his attorney's investigation had revealed a substantial history of search warrants issued during a two-year period, based on applications strikingly similar to that which led to the seizure of evidence introduced against the defendant, in which the same police officer relied upon the same confidential informant, with minimal corroboration and with, the defendant contended, suspiciously few contraband seizures, was held by this court to have raised inferences of deliberate police reliance on a fictitious informant, sufficient to entitle the defendant to an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978). [50-53]

Where a criminal defendant was entitled to a postconviction hearing, pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978), on the veracity of representations made in an application for a search warrant, the judge, at or prior to the hearing, was to hold an in camera interrogation of the confidential informant on whom the application had relied, and was to exercise discretion whether to compel disclosure of the informant's identity. [53-54]

INDICTMENT found and returned in the Superior Court Department on June 8, 1988.

The case was tried before *Mel L. Greenberg*, J., and post-trial motions were heard by him.

The Supreme Judicial Court on its own intiative transferred the case from the Appeals Court.

*John Salsberg* for the defendant.

*Susan Underwood*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On January 9, 1989, a jury convicted the defendant of possession of cocaine with intent to distribute in violation of G. L. c. 94C, § 32A (1992 ed.). On February 26, 1990, the defendant filed a motion for a new trial. The defendant based this motion on allegedly newly discovered evidence indicating that the search warrant that led to the seizure of the evidence introduced against him had been obtained unlawfully. Specifically, the defendant contended that a police officer deliberately relied on a fictitious informant to establish probable cause for the issuance of the warrant. On August 2, 1990, the defendant filed a motion for an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978), in order to inquire further into these allegations.[1] A judge in the Superior Court issued an order denying both of these motions without a hearing. Before us are the consolidated appeals from the judge's order and from the defendant's conviction.

The underlying facts are these.[2] On September 24, 1987, Detective Eduardo Dominguez of the drug control unit of the Boston police department applied for a warrant to search apartment no. 38 at 170 Parker Hill Street in the Roxbury section of Boston. In support of his application, Dominguez filed a sworn affidavit setting forth the following information which Dominguez claimed to have received from a confiden-

---

[1]Pretrial motions to suppress and for disclosure of the informant's identity had been denied. The posttrial motions were accompanied by a "Memorandum in Support of Defendant's Motion for a New Trial" and by three appendices showing the use of the same unnamed informant by the same police officer in seventy-one prior applications in Boston for search warrants between December, 1985, and December, 1987, together with copies of the warrants, their applications (affidavits), and returns (where applicable).

[2]The defendant raises no argument pertaining to the direct appeal from his conviction. We summarize only those facts necessary to the analysis of the issues raised by his posttrial motions.

tial informant referred to as "IT":[3] IT allegedly had been in apartment no. 38 "within the past two weeks and most recently within the past twenty four hours." IT knew the defendant to be the "occupant" of apartment no. 38. IT had observed the defendant sell a substance believed to be cocaine to numerous visitors. After IT reported this information to Dominguez, the affidavit added, Dominguez conducted a "covert surveillance" of apartment no. 38 and "observed an unusual amount of [traffic] enter and exit said apartment."

That same day a magistrate issued a warrant to search for cocaine and drug paraphernalia in apartment no. 38 and on the person of the defendant. Timely execution of the warrant led to the seizure of 235 grams of cocaine and a scale in apartment no. 38. On the person of the defendant, police seized thirteen plastic bags containing cocaine. This evidence led to the defendant's arrest and, later, to his indictment by a grand jury for trafficking in cocaine.

Prior to trial, the defendant moved to suppress the evidence seized and to compel disclosure of IT's identity.[4] The judge held a hearing, in the course of which the defendant's trial counsel disputed the truth of the information contained in Dominguez's application. Counsel stated that the defendant was prepared to testify to the following facts: At the time of his arrest, the defendant and his family resided not in apartment no. 38 but at 126 Day Street in the Jamaica Plain section of Boston. The defendant was employed on a

---

[3]The affidavit stated that IT "has proven to be reliable in the past by furnishing information to [Dominguez] which led to the arrest and conviction of one Luis Ortiz in Suffolk Superior Court for Distribution of a class A controlled subtance and the arrest and pending trial of one Felix Zorrilla in [Suffolk Superior Court] for Trafficking in Cocaine."

[4]The defendant argued that, on its face, the application filed by Dominguez did not establish probable cause to support the issuance of the search warrant. The defendant also contended that the information attributed to IT was false, and that the court should inquire into the matter by conducting an in camera interview of IT. In this appeal, the defendant does not claim the application to be insufficient on its face to establish probable cause. He pursues only the second issue.

full-time basis with three separate employers, and he worked extraordinarily long hours.[5] Apartment no. 38 was occupied by relatives of the defendant, whom he had visited on only a few occasions. On the day of his arrest, the defendant had found temporary refuge in apartment no. 38 following a marital dispute which had led his wife to request that he leave their home.[6] Counsel argued that records of the defendant's employment could corroborate this testimony. Such records would strengthen the defendant's claim that, contrary to Dominguez's representations, he had not sold controlled substances out of apartment no. 38.

The judge expressed concern with counsel's allegations of police misconduct and proceeded to conduct an in camera interview of Dominguez. In response to the judge's questions, Dominguez stated that he had used IT's services for approximately one year prior to September of 1987. Dominguez testified that IT frequently reported to him on illegal drug transactions throughout the city. IT reported for the first time that drug activity took place in apartment no. 38 approximately three days before Dominguez obtained a search warrant for that apartment. IT named the defendant in connection with drug activity in apartment no. 38 and furnished a brief physical description of the defendant. After hearing Dominguez's testimony, the judge found that there "would be no compelling reason for the name of the informer to be

---

[5]Counsel stated that the defendant "worked three jobs," and that he "worked day and night up until this point." In his trial testimony, the defendant himself further explained his employment situation and testified that he worked eight hours a day at a Boston hospital and eight hours a day at a Boston hotel.

[6]The defendant testified to essentially similar facts at his trial. The defendant's wife, as well as a cousin whose name appeared on the lease for apartment no. 38, corroborated the defendant's testimony. At trial, the defendant also testified that, on the day of his arrest, he had lent his automobile to one of the occupants of the apartment. The defendant explained that, before he retrieved his car, he was told that the individual had left drugs in the glove compartment. The defendant claimed that he was in the process of returning these drugs when police intercepted him.

We set forth the defendant's trial testimony for background purposes only, as it is irrelevant to our analysis of the issues before us.

disclosed to the defense." The judge also found that the information contained in Dominguez's affidavit established probable cause to support the issuance of the warrant to search apartment no. 38, and he denied the defendant's motion to suppress.

About eight months after the defendant's conviction, this court rendered its decision in *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989). The court's opinion detailed egregious instances of perjurious and fraudulent conduct by officers of the drug control unit of the Boston police department, including the fabrication of a confidential informant as a means of obtaining search warrants in ostensible compliance with constitutional requirements. *Id.* at 582.[7] This conclusion was based on sworn admission by police officers and investigatory work by defense counsel which revealed implausibly frequent reliance on a single informant during discrete periods of time. Following the release of the *Lewin* opinion, and based on his knowledge that Dominguez belonged to the same unit as the officers involved in that case, the defendant's appellate counsel undertook to investigate Dominguez's history of reliance on IT.

Counsel's careful investigatory work uncovered the issuance of seventy-one successful search warrants based on sworn applications in which Dominguez relied on information supplied by IT in a period spanning approximately two

---

[7]It was undisputed that perjurious and fraudulent police behavior took place in *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989). An issue of fact, however, arose with respect to whether police officers had fabricated the informant or deliberately withheld his existence so as to conceal exculpatory evidence. Based on the sworn admissions of the officers and on investigatory work by defense counsel, the court concluded that the motion judge's endorsement of the latter option was clearly erroneous and that fabrication did occur. *Id.* at 582-583. The author of this opinion, joined by Justice Abrams, dissented and expressed disagreement with this characterization of the facts of *Lewin*. *Id.* at 590 (Liacos, C.J., dissenting, with whom Abrams, J., joined). *Id.* at 593-594 (Abrams, J., dissenting, with whom Liacos, C.J., joined). We accept today, as we must, the court's view of the precise aspect of the police misconduct detailed in *Lewin*. We also note that we would reach the same result in the present case had the dissenters' view carried the day in *Lewin*.

years.[8] In his motion for a new trial, and later in his motion for a *Franks* hearing, the defendant argued that review of these sworn applications by Dominguez gave rise to strong inferences that IT was a fictitious informant. The defendant contended that there existed striking similarities in Dominguez's account of drug transactions reportedly observed by IT. The defendant argued that police corroboration of IT's observations was consistently minimal.[9] The defendant argued that Dominguez relied on IT with suspiciously high frequency in discrete periods of time to obtain search warrants throughout the city.[10] The defendant contended that, in light of the uniform representations that IT had observed drug activities in the premises to be searched within a few days before the search occurred, information supplied by IT had led to a suspiciously low number of contraband seizures.[11] The defendant also noted that, contrary to Dominguez's tes-

---

[8] Counsel used the applications' reliance on the conviction and arrest, pending trial, of Luis Ortiz and Felix Zorrilla to vouch for IT's credibility as a starting point for his search of applications based on information supplied by IT. See note 3, *supra*. Counsel then traced the names of other persons listed in conjunction with Zorrilla or Ortiz in the search warrant applications.

[9] The defendant illustrated these points with a sample compilation of Dominguez's applications. Each of the affidavits filed in support of an application sets forth essentially similar facts: IT reported to have been inside certain premises within the previous twenty-four hours. IT had observed a named individual repeatedly sell a substance IT believed to be cocaine. On receipt of IT's information, Dominguez conducted relatively imprecise corroborative work such as the "covert surveillance" of the suspect premises. Each such affidavit contained no background information as to IT's relationship with the individuals allegedly engaged in unlawful drug activity, or on the circumstances under which IT infiltrated the premises to be searched. Similarly, no information as to whether IT made a purchase of a controlled substance from the individual was set forth.

[10] For example, the defendant pointed out that, in April, 1986, Dominguez relied on IT in eleven search warrant applications. On April 10, 1986, Dominguez obtained three separate search warrants based on information attributed to IT. Between April 9, 1987, and May 7, 1987, Dominguez relied on IT in nine applications.

[11] The defendant presented data indicating that approximately 60% of the search warrants which Dominguez obtained pursuant to information supplied by IT had led to the seizure of contraband.

timony at the hearing on the pretrial motion to suppress, Dominguez began relying on IT as far back as December, 1985. The defendant argued that, in light of the fabrication and concealment of an informant made by Dominguez's colleagues in *Lewin*, he had presented enough evidence to warrant a new trial, or, in the alternative, an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978).

Based on these facts, the defendant argues before us that the motion judge erred when he denied the posttrial motions.[12] In our view, the crux of the defendant's grievance lies in the denial of his motion for a *Franks* hearing, not in the denial of the motion for a new trial. The new trial motion is based on the claim that Dominguez's credibility was a crucial issue at trial, and that the evidence discovered by counsel cast doubt on Dominguez's integrity. It is well established that "[n]ewly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial." *Commonwealth* v. *Toney*, 385 Mass. 575, 581 (1982). Based on our review of the record, we find no reason to disturb the judge's discretionary denial of the defendant's motion for a new trial in the present case.[13]

---

[12]We disagree with the Commonwealth's claim that the defendant was precluded from submitting newly discovered evidence on a posttrial motion for a *Franks* hearing because the defendant had access to such evidence at the time of his initial motion to suppress. In the context of a motion for a new trial, we have held that "[t]he defendant has the burden of proving that reasonable pretrial diligence would not have uncovered the evidence." *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986). Logic and consistency dictate that this standard be applied to a posttrial motion for a *Franks* hearing. As will be explained, the strength of the defendant's preliminary showing in the present case rests in large part on the similarities between his offer of proof that police fabricated the existence of an informant and the similar instances of misconduct established in *Lewin*. It follows that, because this court's decision in *Lewin* had not been rendered at the time of the defendant's initial motion to suppress, the defendant could not reasonably be expected to uncover at that time evidence now essential to his case.

[13]Similarly, we find no merit to the defendant's argument that the discovered affidavits render IT unreliable so that the judge's initial finding of probable cause becomes retroactively erroneous. "In reviewing a finding of probable cause, only the facts revealed on the face of the affidavit and any

Because the defendant attacks the veracity of Dominguez's representations in the application for a warrant, the proper procedural route for his challenge is his motion for a *Franks* hearing. In *Franks, supra* at 155-156, the United States Supreme Court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment [to the United States Constitution] requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." See *Commonwealth* v. *Amral*, 407 Mass. 511, 519-520 (1990), quoting *Franks, supra* at 155-165; *Commonwealth* v. *Douzanis*, 384 Mass. 434, 437 (1981); *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 766 (1981). See also *Commonwealth* v. *Reynolds*, 374 Mass. 142 (1977).[14]

---

reasonable inferences therefrom may be considered." *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990), and cases cited. The defendant does not contend that the judge erred when he concluded that the facts contained in Dominguez's affidavit supported the issuance of a search warrant. Hence, we have no cause to disturb that finding.

We note, however, that this search warrant will be voided if the defendant proves his allegations in the course of the evidentiary hearing which we order today. In turn, the evidence seized would have to be suppressed and the defendant's conviction set aside.

[14]We have suggested that the Constitution of this Commonwealth may impose a stricter standard on police than the Fourth Amendment to the United States Constitution, as construed in *Franks*. See *Commonwealth* v. *Douzanis*, 384 Mass. 434, 437-438 n.7 (1981); *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 768 (1981). We have not faced squarely the issue whether our Constitution requires the exclusion of all evidence obtained pursuant to a police officer's deliberate misrepresentation under oath to a magistrate, regardless of whether the false state-

The theoretical underpinning of *Franks* is that the Fourth Amendment's protection against arbitrary governmental action would be eviscerated if the police did not make a truthful showing of probable cause. See *United States* v. *Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966). *Franks*, however, also recognized that unfettered access to veracity hearings may lead to abuse of the process and may impose an undue burden on the traditional independence of magistrates. See *People* v. *Lucente*, 116 Ill. 2d 133, 151 (1987). The requirement of a "substantial preliminary showing" of intentional or reckless police misrepresentations accommodates these competing concerns by ensuring that spurious claims will "wash out at an early stage." *Franks*, *supra* at 170.

The Commonwealth contends that the defendant did not make such a substantial preliminary showing of police misconduct. In *Franks*, the Court did not undertake to define precisely the burden of proof which a defendant seeking a hearing should carry.[15] The Court explained that the defendant must do more than present unsubstantiated allegations or express "a mere desire to cross-examine" the affiant. *Id.* at 171. See *Commonwealth* v. *Ramos*, 402 Mass. 209, 215-216 (1988); *Commonwealth* v. *Douzanis*, *supra* at 439. See also *United States* v. *Figueroa*, 750 F.2d 232, 237 (2d Cir. 1984); *United States* v. *Erickson*, 732 F.2d 788, 790 (10th Cir. 1984). The Court also held that the defendant must prove a claim of perjury at the hearing by a preponderance of the evidence, thereby implying that the threshold requirement must be a lesser standard. *Franks*, *supra* at 156, 171-172. Thus, as the Supreme Court of Illinois has stated, "the precise standard lies somewhere between mere denials on the

---

ments were indispensable to the finding of probable cause. *Id.* We need not address this issue today because the parties agree that, should the defendant prove his allegations that IT is a fictitious informant, there would be no probable cause to support the issuance of the warrant pursuant to which the evidence introduced at trial against the defendant was seized.

[15]The Court expressly stated that the framing of suitable rules to govern such proffers is a matter properly left to the States. *Franks* v. *Delaware*, 438 U.S. 154, 172 (1978).

one hand and proof by a preponderance [of the evidence] on the other." *Lucente, supra* at 152. See *Ramos, supra* at 215 n.5.

It is not unprecedented for a criminal defendant seeking to meet the preliminary showing requirement of *Franks* to argue that similarities among search warrant applications previously filed by the affiant give rise to an inference of police misrepresentation. See *United States* v. *Savides,* 658 F. Supp. 1399 (N.D. Ill. 1987). See also *Commonwealth* v. *Singer,* 29 Mass. App. Ct. 708 (1991). In *Savides, supra* at 1403, the court refused to grant a hearing based on such a showing because it found that "sufficient differences existed between the prior affidavits and the one supporting the [challenged] search warrant to dispel[] any fear of fabrication." In addition, the court found, the similarity among the affidavits reflected standard investigative techniques rather than police misrepresentation. *Id.*

Unlike the *Savides* court, our review of the affidavits submitted by the defendant in the present case does not leave us without concern that IT was a fictitious informant. We reach this conclusion based on the cumulative strength of the inferences to be drawn from these affidavits evaluated in light of the instances of police misconduct which we detailed in *Commonwealth* v. *Lewin, supra.*[16] In that case, the investigatory

---

[16]We disagree with the Commonwealth's claim that Dominguez's membership in the same police unit as the *Lewin* officers is "hardly relevant." While Dominguez's professional association with dishonest officers alone sheds no light on his integrity, we need not ignore the similarities between the substantiated allegations made here and the established prior misconduct of Boston police officers working in the same unit. This method of analysis resembles that which the United States Supreme Court prescribed in cases such as *Swain* v. *Alabama,* 380 U.S. 202, 227-228 (1965), which required that defendants alleging racial bias in a prosecutor's peremptory challenges establish a pattern of discriminatory conduct by the prosecutor's office. Such inquiry necessarily involved investigation of prior instances of racial discrimination by colleagues of the prosecutor.

While the the Supreme Court has overruled *Swain* in part, see *Batson* v. *Kentucky,* 476 U.S. 79, 89-96 (1986), it has done so only because of the need to adopt a more lenient practice whereby defendants may establish racial bias without having to meet the hard burden of proving a pattern of

work of defense counsel uncovered thirty-one applications for search warrants in various parts of the city in which a police officer relied on a fictitious informant during a ten-month period. See *id.* at 582. Commenting on this evidence, the court expressed incredulity at the thought that an informant with such a broad range of knowledge — whom the court called a "peripatetic savant of illicit drug activity in the city of Boston" — would be genuine. *Id.*

The defendant's counsel in the present case also has uncovered suspiciously frequent reliance on a single informant throughout the city by a member of the drug control unit. The defendant also has shown discomforting similarities among the applications relying on this informant and an apparent conflict between these applications and Dominguez's testimony. See *supra* at 46-47. In light of *Lewin,* we cannot conclude with a sufficient degree of certainty that the defendant's showing merely indicates standard investigative techniques. Cf. *Savides, supra.* While Dominguez has admitted to no wrongdoing,[17] and we do not intimate any view on the

---

discrimination. See *id.* at 92 & n.17. See also *Commonwealth* v. *Soares,* 377 Mass. 461, cert. denied, 444 U.S. 881 (1979).

[17] The Commonwealth has argued that *Lewin* is inapposite to the present case because the police officers involved had admitted to their misconduct. However, we rely on *Lewin* not for its precedential value on a question of law but for its description of police misconduct in the Boston police department drug control unit. In *Lewin,* the defendant did not request a *Franks* hearing but sought to have the indictments against him dismissed because of police misconduct. The *Lewin* majority refused to do so but added that it "would have required the suppression of any evidence of drug law violations seized" pursuant to a search warrant containing deliberately false information. *Id.* at 586. Such comment clearly evinces the court's intent not to deprive a defendant of a *Franks* hearing, which is less of an impediment to the government's prosecutorial ability than dismissal of indictments or suppression of evidence, merely because the defendant did not make as much of a showing of police misconduct as that which was made in *Lewin.*

We also note that the Commonwealth misconstrues a dissenting comment made in *Lewin* by the author of this opinion, stating, "I doubt the court would rule in a later case that an affidavit which relies on an informant who supplied information which led to thirty warrants is invalid on its face." *Id.* at 591 n.3 (Liacos, C.J., dissenting). Such comment expressed doubt that the court would invalidate an affidavit *on its face,* and did not

ultimate ability of the defendant to prove his allegations, we hold that the defendant has raised enough inferences of police misconduct to warrant further inquiry at a *Franks* hearing.

We believe that this conclusion strikes an appropriate balance between the need to deter violation of our citizens' constitutional rights and the danger that the process established to achieve this deterrence might be abused. See *Franks*, *supra* at 167. Courts have repeatedly underscored the difficulty inherent in challenging the truthfulness of an affidavit relying solely on a confidential informant. See, e.g., *United States* v. *Brian*, 507 F. Supp. 761 (D.R.I. 1981), aff'd sub nom. *United States* v. *Southard*, 700 F.2d 1 (1st Cir.), cert. denied sub nom. 464 U.S. 823 (1983); *People* v. *Lucente*, 116 Ill. 2d 133, 149 (1987); *State* v. *Casal*, 103 Wash. 2d 812 (1985). "When the informant is named in the affidavit, the defendant may investigate and interview the informant to determine the affiant's veracity. Where, however, the basis for the probable cause rests in the alleged 'reliability' of a particular confidential informant and in statements attributed to a confidential informant, the defendant has no similar opportunity to investigate and to interview the informant as to the affiant's veracity (unless the informant's identity is disclosed). In such a situation, the defendant lacks access to the very information that *Franks* requires for a threshold showing." *Commonwealth* v. *Amral*, 407 Mass. 511, 520 (1990).[18] Rejecting the defendant's showing in the present case would erect an insurmountable barrier in anonymous in-

---

reflect its author's belief as to the court's unwillingness to grant the defendant a *Franks* hearing to question the validity of such an affidavit.

[18]The special nature of the defendant's burden in cases involving a confidential informant also leads us to conclude that the defendant need not have submitted affidavits in support of his request for a *Franks* hearing. The defendant made his preliminary showing by compiling materials, including copies of the seventy-one warrant applications and returns, and presenting extensive written analysis of such materials. The nature of the defendant's showing did not lend itself to presentation by affidavits and we deem the absence of such affidavits satisfactorily explained. See *Franks*, *supra* at 171.

formant cases that effectively would nullify the intent of *Franks* to "provide meaningful, albeit limited, deterrence of and protection against perjurious warrant applications." *Lucente, supra* at 150.[19]

We leave it to the sound discretion of the judge conducting the *Franks* hearing in the present case[20] to decide whether to compel the disclosure of IT's identity. See *Amral, supra* at 518, and cases cited. However, we direct the judge to hold an in camera interrogation of IT at or prior to the hearing in order to determine this question. In *Amral, supra* at 522-523, we held that "the public interest in deterring police misconduct requires the trial judge to exercise his or her discretion to order an in camera hearing where the defendant by affidavit asserts facts which cast a reasonable doubt on the

---

[19] The Commonwealth has relied on *Commonwealth* v. *Singer*, 29 Mass. App. Ct. 708 (1991), for the proposition that a mere showing of similarities among a police officer's applications for search warrants does not fulfil the *Franks* preliminary showing requirement. In *Singer*, the defendant relied on approximately twenty applications submitted by an officer of the Boston police department drug control unit, all relying on a single confidential informant. The defendant initially argued, *id.* at 709, that similarity among these applications showed that the informant was fictitious; he later abandoned this argument and contended that the applications gave rise to an inference that the affiant had misrepresented the informant's track record. *Id.* at 712-713. The Appeals Court held that "twenty affidavits based on information from one informant [do not] provide the substantial preliminary showing of intentional or reckless falsity required by *Franks*. In *Commonwealth* v. *Lewin, supra*, upon which the defendant relies, there was far more evidence of perjury than the mere number of applications (thirty-one) for search warrants. There were sworn repudiations of the existence of the confidential informant by three police officers." *Id.* at 714.

We believe that, in the present case, the defendant's preliminary showing gives rise to stronger inferences of intentional police misrepresentation than the showing made by the defendant in *Singer*. We also acknowledge, however, that the *Singer* court implied that it would not grant a *Franks* hearing unless the defendant showed some direct evidence of perjury, such as the *Lewin* officers' sworn admissions of misconduct. We believe that this conclusion imposes too high a burden on a criminal defendant presenting a legitimate grievance. Accordingly, to the extent that *Singer* conflicts with our decision today, that case is no longer to be followed.

[20] The trial judge, having been appointed to the Appeals Court, is not available to conduct the hearing.

veracity of material representations made by the affiant concerning a confidential informant. . . . The purpose of the in camera hearing would be to enable the judge through interrogating the affiant, and, if necessary, the informant, to determine whether there is a substantial preliminary showing that the affiant has made false statements intentionally or recklessly. . . . If the showing is made, a *Franks* hearing is held at which point the judge may order disclosure."[21]

In the present case, the defendant already has made the showing entitling him to a *Franks* hearing. However, without obtaining more information as to IT, the defendant may be deprived of the means to meet his burden of proof. See 2 W.R. LaFave, Search and Seizure § 4.4 (d), at 201-203 (1987), and cases cited. In turn, the judge may have no concrete basis on which to decide whether to order disclosure of IT's identity. The rule of practice announced in *Commonwealth* v. *Amral*, 407 Mass. 511 (1990), is designed to help a defendant overcome the hardship of securing the preliminary information necessary to obtain a *Franks* hearing while protecting the government's privilege to keep its informants' identity confidential. See *Amral, supra* at 520.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[21]The author wrote separately in *Amral* to express his view that defense counsel ought to be allowed to participate in the in camera hearing subject to such protective orders as the judge deemed necessary. See *Amral, supra* at 526 (Liacos, C.J., concurring). While the author still adheres to that view, the author is constrained to follow the rule on this point set forth by the court in *Amral.*