COMMONWEALTH *vs.* WILLIAM BENNETT.

No. 94-P-1798.

Norfolk. June 8, 1995. - December 15, 1995.

Present: SMITH, JACOBS, & IRELAND, JJ.

*Search and Seizure*, Affidavit, Warrant. *Constitutional Law*, Search and seizure. *Practice, Criminal*, New trial.

A criminal defendant did not establish his right to an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978), on his motion for a new trial, where there was no specific allegation that some substantive portion of the affidavit submitted in support of the application for the search warrant in question was untrue or misleading. [533-536]

INDICTMENTS found and returned in the Superior Court Department on November 21, 1989.

A motion for a new trial, filed on August 4, 1994, was considered by *Robert W. Banks*, J.

*Dana Alan Curhan* for the defendant.

*Stephanie Martin Glennon*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. During the investigation of the murder of Carol DiMaiti Stuart in 1989, Boston police Detective Peter O'Malley applied for and obtained a warrant to search the premises of the defendant. A Brookline police officer, who was present during the execution of that warrant on November 10, 1989, observed items that he believed were related to an armed robbery committed in Brookline on October 2, 1989. Relying in part upon his observations, the Brookline police officer obtained a subsequent warrant, pursuant to which the observed items were seized and either introduced in evidence or described during the trial of the defendant for the armed robbery. Following his conviction for that crime, the defendant moved for a new trial on the ground of ineffec-

tive assistance of counsel. His appeal from the denial of that motion was rejected in *Commonwealth* v. *Bennett*, 414 Mass. 269 (1993). Thereafter, the defendant brought a second motion in the trial court grounded on a claim of discovery of new and substantial evidence and seeking, alternatively, a new trial or a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978). The trial judge denied that motion without a hearing, concluding that the information relied upon by the defendant was neither newly discovered nor sufficient to warrant a *Franks* hearing. He also rejected the defendant's argument that a footnote in the Supreme Judicial Court's decision affirming the denial of his first motion for a new trial, itself supplied grounds for a new trial not previously available.

The defendant appeals from the denial of his second motion, arguing that he should have been granted a *Franks* hearing because evidence discovered after his trial establishes that O'Malley signed and swore to, but did not author, the 1989 affidavit.[1] He relies on information, gleaned from the transcript of a disciplinary hearing conducted by the Boston police department in February, 1993, with respect to O'Malley's conduct during the Stuart homicide investigation, that Suffolk County assistant district attorney Thomas Mundy drafted the eight-page affidavit. In further support of his claim of a right to a *Franks* hearing, the defendant points to: (1) O'Malley's alleged admission at the disciplinary hearing that parts of the 1989 affidavit signed by him consisted of information presented to a grand jury to which he and other investigating detectives had no access,[2] (2) O'Malley's April

---

[1] The defendant raises no separate argument pertaining to the denial of his motion for a new trial.

[2] There is no indication in our record that this "admission" is attributable to O'Malley. The excerpts from the transcript of the disciplinary hearing in our record indicate that Captain Edward J. McNelly testified that police officers "are not empowered to sit in on an investigative grand jury. This comes strictly under the domain of the District Attorney who at the time was Assistant District Attorney Thomas Mundy. We were not even aware of what the testimony was within the grand jury." The Commonwealth argues that the defendant has not demonstrated that the unspecified grand jury information was not known to the police prior to its being

2, 1992, affidavit filed in opposition to the defendant's first motion for a new trial, which the defendant claims indicates that O'Malley affirmatively concealed the fact of Mundy's authorship, thereby placing his veracity in question,[3] and (3) a statement by the Supreme Judicial Court in a footnote to its decision that "[t]he defendant presented . . . a reasonable basis for finding at this time that certain statements in the affidavit in support of the issuance of the first search warrant not essential to a finding of probable cause were false and that the police affiant knew that those statements were false." *Commonwealth* v. *Bennett*, 414 Mass. at 273 n.3.

When a convicted defendant, relying on allegedly newly discovered evidence, "attacks the veracity of . . . representations in the application for a warrant, the proper procedural route for his challenge is his motion for a *Franks* hearing." *Commonwealth* v. *Ramirez*, 416 Mass. 41, 48 (1993). In *Franks*, the United States Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155-156. The Court instructed that "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out spe-

---

presented to the grand jury. The Commonwealth then goes on to use references to portions of the transcript of the disciplinary hearing which are not in our record to support its contention that "Boston police officers had received first-hand from witnesses the same information that was later proffered in the grand jury."

[3]The defendant's brief does not specify how the fact of Mundy's authorship was concealed. The Commonwealth in its brief assumes that the alleged concealment took the form of a reference in O'Malley's April 2, 1992, affidavit to the November 10, 1989, document as being "my" affidavit.

cifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* at 171.

The burden is squarely on a defendant to establish his right to an evidentiary hearing. See *Commonwealth* v. *Blake*, 413 Mass. 823, 825-826 (1992); Smith, Criminal Practice & Procedure §§ 187, 188 (1983 & Supp. 1995). In light of our conclusion that the defendant has not met that burden, it is not necessary that we examine, as did the motion judge, the propriety of an affiant signing and swearing to an affidavit prepared by another.[4]

We are mindful of the sensitivity with which the *Franks* standard should be applied to the circumstances of each case, see *Commonwealth* v. *Ramos*, 402 Mass. 209, 215 n.5 (1988), but even if we accord great weight to the contentions that Mundy's authorship intentionally was concealed and that the affidavit contained grand jury information unknown to O'Malley, we discern nothing more than a conclusory attack inviting speculation about the veracity of the contents of the affidavit. The linchpin of a successful request for a *Franks* hearing is a specific allegation that some substantive portion of the affidavit is untrue or misleading. Nothing in

---

[4]In his decision the judge stated that "[i]t is routine practice" for assistant district attorneys to "prepare affidavits to which police officers swear" and that such practice "was readily discoverable prior to the first new trial motion." Accordingly, he determined, relying on Mass.R.Crim.P. 30(c)(2), 378 Mass. 901 (1979), that the defendant had waived the issue of O'Malley's not having authored the affidavit by failing to raise it in his first motion for a new trial. While there may be some support for the judge's reliance on his considerable experience as a prosecutor in certain limited decisional circumstances, see *Commonwealth* v. *McKay*, 23 Mass. App. Ct. 966, 967 (1987), such an approach generally should be avoided, not only for the reason that the defendant should have a fair opportunity to confront evidence adverse to his interests, but also because prosecutorial practice may differ, as witnessed by O'Malley's testimony at the disciplinary hearing that he had been involved with one hundred affidavits and search warrants and, other than in this case, had never signed an affidavit prepared by another.

our record[5] even remotely resembles the requisite particularized claim. "Such a challenge does not rise to the level of a substantial preliminary showing of intentional falsity or reckless disregard for the truth in the affidavit." *Commonwealth v. Blake*, 413 Mass. at 826.[6]

There is no indication in our record that the defendant, beyond alluding to the footnoted statement in *Commonwealth v. Bennett, supra*, made any attempt to place before the motion judge the information that was before the Supreme Judicial Court, which may have led it to indicate that there was "a reasonable basis for finding [at the time of its decision] that certain statements in the affidavit . . . were false and that [O'Malley] knew that those statements were false." *Id.* at 273 n.3. Given the reservation in *Commonwealth v. Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 768 (1981), of the question whether art. 14 of the Massachusetts Declaration of Rights requires suppression of all evidence obtained following deliberate, as distinguished from reckless, misrepresentation in an affidavit in support of the issuance of a search warrant, notwithstanding that the misrepresented information is not necessary to a finding of probable cause, it might have been incumbent on the motion judge to permit an evidentiary hearing upon a minimal show-

---

[5]The pertinent parts of our record comprise excerpts of the transcript of the disciplinary hearing, the affidavit in question, O'Malley's 1989 and 1992 affidavits, and a Boston Globe article dated February 3, 1993, reporting O'Malley's testimony at the disciplinary hearing. The latter two items originally accompanied the defendant's motion to the Supreme Judicial Court prior to its decision in *Commonwealth v. Bennett, supra*, seeking a stay of deliberations and guidance from the court. The motion was denied on the day preceding publication of the court's decision in *Commonwealth v. Bennett, supra*, "without prejudice to the presentation of a new motion for a new trial in the Superior Court. . . ."

[6]The defendant's request, apparently made for the first time in his brief, that he be permitted to examine O'Malley, even if it properly were made under Mass.R.Crim.P. 30(c)(4), 378 Mass. 901 (1979), rather than "pursuant to Mass.R.Crim.P. 14(a)(2)," 378 Mass. 874-875 (1979), as it was, is similarly deficient since the discretionary authorization under rule 30(c)(4) of "such discovery . . . as would be available in civil cases" is predicated upon the moving party filing affidavits establishing "a prima facie case for [postconviction] relief."

ing of the falsity to which the Supreme Judicial Court alluded, but did not identify, in its footnote in *Commonwealth v. Bennett.*[7] Compare *Commonwealth v. Ramirez*, 416 Mass. at 48 n.14, with *Commonwealth v. Dion*, 31 Mass. App. Ct. 168, 170 n.3 (1991). Absent such a showing, a *Franks* hearing was not required as matter of law, nor was its denial an abuse of discretion. See *Commonwealth v. Nine Hundred & Ninety-two Dollars*, 383 Mass. at 774-775 & n.12.

The order denying the defendant's motion for a new trial or for a *Franks* hearing is affirmed.

*So ordered.*

---

[7]The Commonwealth, relying on its examination of the grand jury material submitted with the defendant's first motion for a new trial, suggests that "the only specific information that the defendant could have cited in his second motion for new trial involved a partial recantation" made by a witness, after the November 10, 1989, search warrant was executed. Neither the grand jury minutes nor the substance of that recantation is set forth in our record. In any event, the Commonwealth intimates that the partial recantation is the information to which the footnote is directed and that it reflects primarily on the veracity of another O'Malley affidavit in the Stuart case in support of a November 22, 1989, warrant to search a residence other than the defendant's, a search that has no relation to this case.